## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* LUTHER S. WHITE, APPELLANT.

*Forgery — corroboration of an accomplice — not afforded by testimony of the accomplice as to other forged notes — conspiracy.*

Where one is charged with forgery in the second degree, in that he had directed the actual forger to sign a person's name to a note, as alleged, in pursuance of a scheme between the parties to forge notes of various persons, forged notes not set out in the indictment, and proved only by the testimony of the accomplice, are not competent in corroboration of the testimony of said accomplice under section 399 of the Code of Criminal Procedure, which provides that a conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime.

Proof of like acts is allowed in some cases to show a criminal intent in the case of an act which might be an innocent one; but evidence of participation in forging a note, and in using it as genuine, is of itself proof of guilty intent. Hence the reason of the rule fails in that case.

Where the indictment alleges a conspiracy to forge notes, the testimony of an accomplice, in support of the indictment, must be corroborated in order to establish the existence of such a conspiracy.

After the testimony of the accomplice has been corroborated evidence may be given of acts in furtherance of the conspiracy.

Corroboration is, however, not afforded by the production of alleged forged notes, other than the one set out in the indictment, which are proved to have been the product of the conspiracy only by the testimony of the accomplice.

APPEAL by the defendant Luther S. White from a judgment of the Court of Sessions of Schoharie county, rendered against him therein on the 14th day of December, 1889, whereby he was convicted of the crime of forgery in the second degree and was sentenced to imprisonment in a State's prison for the term of five years at hard labor; and also from an order, entered in the office of the clerk of said county on said 14th day of December, 1889, denying his motion for a new trial.

*H. Krum*, for the appellant.

*Dow Beekman*, for the respondent.

LANDON, J. :

The defendant was jointly indicted with one Wellington E. Vanderhoof for forgery in the second degree, for forging the name

of Edward Van Auken to a promissory note for eighty-five dollars, as maker thereof. The indictment charged that the forgery was done by Vanderhoof, but that the defendant "aided, abetted, commanded, induced and procured" Vanderhoof to do it. Vanderhoof demanded a separate trial, which which was granted, and thereupon the defendant was separately tried at the Schoharie Sessions in December, 1889, found guilty, and sentenced to imprisonment for five years. The defendant appeals from the judgment of conviction and sentence, and from the order denying a new trial.

Vanderhoof was the principal witness against the defendant. He testified that he forged the name of Edward Van Auken as maker of the note, and then uttered the note as genuine, and also that he did so at the instance and procurement of the defendant. Upon the whole evidence there was no doubt as to the guilt of Vanderhoof; the main effort of the people upon the trial was to corroborate his testimony with respect to the guilty participation of the defendant. If, in that respect, the corroboration is insufficient, or is based upon incompetent evidence to which the defendant duly objected, then the conviction was erroneously procured. Vanderhoof, upon his own testimony and upon the theory of the people, was an accomplice; unless we assume that fact for the purposes of this review, the conviction should be reversed as wholly unsupported. The Code of Criminal Procedure (§ 399) provides: "A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

It is obvious from the statement already made that the "other evidence" cannot "tend to connect the defendant with the commission of the crime" unless it bears, in some slight degree, upon the alleged acts of the defendant implicating him in procuring or advising, or requesting Vanderhoof to commit it. Vanderhoof might relate a hundred circumstances of his co-operation with the defendant in matters near to this crime, in point of time and locality, and be corroborated in them all, and yet none of them amount to legal corroboration unless they touched in some degree some fact necessary to constitute defendant's commission of the crime itself or to show his previous connection with it. Vanderhoof comes to the witness stand confessedly guilty of the crime himself; the people

commend him to confidence by calling him ; they desire to treat him fairly, and in this they are liable to err in his favor ; his hazard of punishment is not increased, and he may hope that it will be diminished ; he may, with seeming safety, gratify his malice against the defendant, and he may reasonably hope to excite such commiseration as will mitigate his fate, if he can shift from himself to the defendant a part of the responsibility for his own guilt. The law would be justly subject to reproach if it allowed him to interweave his story of the defendant's guilt, as to which he could in no wise be corroborated, with the truthful tale of other circumstances as to which corroboration would be easy, and then should infer the truth of the charge of crime from the truth of the statements into which the charge was interwoven. Since the enactment of the section quoted the courts have uniformly held that there must be some evidence other than that of the accomplice fairly tending to connect the defendant with the commission of the crime. (*People* v. *Elliott,* 106 N. Y., 288 ; *People* v. *Everhardt,* 104 id., 591 ; *People* v. *Ryland,* 97 id , 126 ; *People* v. *Jaehne,* 103 id., 182 ; *People* v. *O'Neil,* 109 id., 251 ; *People* v. *Plath,* 100 id., 590.)

Tested by this rule, we think this conviction must be reversed because it is based upon evidence which was incompetent either to sustain the principal charge or to corroborate the accomplice, or for any purpose relevant to this trial.

The note in question was made June 1, 1887. In the fall of 1886, G. B. Lampman, as agent for E. D. Larkin in the sale of grain drills, had left with Lincoln Van Auken, near Middleburgh, a grain drill on trial, price eighty-five dollars, to be paid for the following spring if satisfactory. In the spring of 1887, Vanderhoof became the agent at Middleburgh for Larkin in the sale of grain drills, and Lampman left with Vanderhoof, for settlement, the transaction with Lincoln Van Auken about the grain drill on trial. Vanderhoof had agreed with Van Auken to take pay in hops. June 1, 1887, Lampman came to Middleburgh and asked Vanderhoof to pay him for the grain drill, or give him the buyer's note. Vanderhoof had not then received the hops. Lampman drew the note in question, and handed it to Vanderhoof to get the buyer's signature. Thus far there is no question about the facts. Taking up Vanderhoof's testimony at this point, we find it as follows :

"I then went down to White and told him Lampman was out and wanted pay for the drill either in money or the note, and that I could not get any note or pay for the drill of Van Auken, and that he (Van Auken) wanted to deal the hops instead of paying or giving a note. Lampman made out this note, filled the body of it out himself, and I took the note and went down to White's, and there I signed the note with Van Auken's name to it. At White's office nobody there but White and myself. White said : 'Sign Van Auken's name to the note and it couldn't be found out but what Van Auken had this property, and the note would be better in his name than in any other party's.'" Edward Van Auken, whose name Vanderhoof wrote as maker of the note, was the father of Lincoln, and the two lived together.

It is thus seen that the proof of the guilt of the defendant requires some corroboration of -Vanderhoof's testimony that the defendant told him to sign Van Auken's name to the note. Direct corroboration there is none. If the defendant spoke the words, they were heard by no one except Vanderhoof ; the defendant has made no confession. The people rely upon a circumstantial corroboration. The question is whether it tends to support Vanderhoof's testimony that the defendant told him to forge Van Auken's signature to the note.

Vanderhoof was a young man about twenty-three years of age ; he commenced to act as agent for the sale of agricultural implements at Middleburgh in the spring of 1887. It does not appear that he had previously lived in that village. The defendant was ten years older, was engaged in the coal business at Middleburgh, and was in good credit, fairly prosperous, active and eager to make money, and disposed to make it both in his regular business and outside of it, in small speculative trades and in buying notes. His general reputation was good. He and Vanderhoof had known each other three or four years before Vanderhoof came to Middleburgh. Vanderhoof testified that soon after he commenced selling agricultural implements, about two months before the date of this forgery, the defendant solicited two interviews with him, in the first of which he asked Vanderhoof how he made his payments to his principals, Larkin and Childs & Company ; that he told the defendant that he had to make them in cash or good indorsed notes ; and at the second

interview defendant told him that he had been thinking of a little scheme that would work between the two; that he should turn over the notes and accounts to the defendant, and he could use the money to advantage in his business, and they would forge notes against good parties and send them to Vanderhoof's principals; that if Vanderhoof had to sell some goods less than cost, the defendant would make good the loss out of his coal sales in the fall and pay him $500 besides; that Vanderhoof consented to this arrangement; that they began by forging four or five notes, Vanderhoof forging two or three, and the defendant the others; that these notes were taken up when due; that other forgeries followed in like manner, and the notes were taken care of and returned to the defendant, who destroyed them, and the note in question was made in the course of these transactions under the circumstances already detailed. Of course, the destroyed notes were not produced. But there were produced upon the trial thirteen or more notes, all of which were forgeries. Vanderhoof testified that the defendant forged two of them, one in the name of John Bush as maker, and the other in the name of Robert Smyth as maker, and that he, Vanderhoof, forged the others under the defendant's direction. The comparison of the forged names, John Bush and Robert Smyth, with the names which Vanderhoof testifies that he forged to the other eleven notes, shows features in common, and that his skill in forgery had definite characteristics and limitations which appear in like manner in the forged names of Bush and Smyth, as in some of the other forged names having some of the same letters.

The defendant in his testimony contradicts fully the testimony of Vanderhoof respecting defendant's proposal of forgery and subsequent participation in it. He testified that he did cash notes for Vanderhoof "at a shave," lent him money on others, signed a note for his accommodation and took as security an assignment of notes and accounts. That on the 10th day of October, 1887, he discovered that Vanderhoof had put forged notes and fictitious accounts upon him; that he thereupon took counsel and was advised to get further security, and saw Vanderhoof and obtained it in the form of bills of sale of personal property and a mortgage upon his wife's real estate; that the defendant told Vanderhoof that as fast as he could pay him he would release the property, and Vanderhoof did make some

payments. Presently other forgeries of Vanderhoof transpired, and on November 10, 1887, he ran away. Having sold his goods during eight months of business for less than they cost him, paid some money to his principals and protected some of the forged paper he had sent them; paid the defendant liberal "shaves" for cashing paper; transferred to him notes and accounts to secure his indorsement; turned over to him all he had left to secure him against other forged paper which he had passed upon him, added to the expense of support for himself and wife, it is easy to see that in the end about all of his assets were in the hands of the defendant. Thus Vanderhoof is amply corroborated as to his general dealings with defendant. After he had been gone some months he told his creditors something like the story he testified to upon this trial. The fact easily proved, and never concealed, that the defendant had the dealings with him, which the defendant admits, made an apparent corroboration of Vanderhoof's testimony, and gave him credit with the jury when he also testified that the securities which he gave the defendant were not given for actual liability, but as mere covers to enable Vanderhoof to cheat others and conceal the true transactions between the parties.

There was some evidence tending to show the defendant's desire, after criminal proceedings were threatened against him, to take up the Van Auken note, and to prevent proceedings before the grand jury. There was also evidence of acts of defendant tending to the protection of Vanderhoof against prosecution for his forgeries. This evidence was doubtless properly received. We do not say that it tended to corroborate Vanderhoof's testimony accusing the defendant of the Van Auken forgery. Such conduct of the defendant may have been inspired by his connection with that forgery, or by some other motive. If the jury had any reasonable doubt as to its significance, they would give the defendant the benefit of it.

But we have no doubt that the other notes and Vanderhoof's testimony that defendant was guilty of participation in their forgery were improperly admitted in evidence. The defendant was not on trial for their forgery, and yet he was put upon trial in that respect, and was certain to be convicted upon this note if there should appear a probability of his guilt in respect of any one of the many others. This is not a case in which proof of other like acts is competent in

order to show the criminal intent of an act which may be innocent. A person may innocently pass a counterfeit bill; the presumption would be strong that he did so if he passed but one and had no more. The presumption weakens as the like act is repeated, and its repetition may, therefore, be shown. So a person may innocently take another's money in the act of making change; but he may do the like act in the like manner so often as to convince a jury that it is one of his ways of stealing. (*People* v. *Williams*, 58 Hun, 278.) But proof of participation in the forgery of a promissory note, and in the use of it as genuine, is of itself proof of the guilty intent. The defendant may be insane or the victim of deception; if the evidence raises such a question, it would, of course, be proper for the people to meet it; no such question was raised by the evidence in this case, and there was no question but that the proof of his participation in the act would be proof of the guilty intent of the defendant.

The people allege a conspiracy between Vanderhoof and defendant to commit forgeries, and then invoke the rule that the conspiracy being first proved every act in furtherance of the conspiracy may be shown. But if the conspiracy is a constituent part of defendant's guilt, or of the evidence tending to establish it, then Vanderhoof's testimony respecting its existence must be corroborated by other evidence. To say that the other notes furnish such evidence is to say that Vanderhoof's testimony corroborates itself, since there is no evidence, other than his testimony, that the other notes were the product of the conspiracy. The existence of the conspiracy rests upon his unsupported testimony, as also the alleged acts in furtherance of it. As both branches of the proposition are unsupported, it is plain that one of them can give no support to the other. However the rule may have been before the statute required other evidence in corroboration of the testimony of the accomplice, the statute now forbids the admission of evidence of such acts in furtherance of a conspiracy, as depend solely upon the existence of the conspiracy for their admissibility, unless the testimony of the accomplice as to its existence is corroborated by other evidence. Otherwise, testimony tending to convict the defendant, whose significance and relevancy depend upon the fact of a conspiracy would be received without establishing the fact.

But if it were proved that all the other notes were forged by both Vanderhoof and defendant, that would only afford evidence of a conspiracy as to them, not as to this note. Even Vanderhoof in his uncorroborated testimony does not claim that this note is so related to the others as to be part of their existence or to stand to them as cause or effect. Vanderhoof's testimony respecting the conspiracy or its covering this note was not corroborated by the other notes or his testimony respecting them, nor by both. The notes were competent neither to prove the crime charged nor the conspiracy to commit it. Independently of Vanderhoof's testimony, that the defendant assisted in their forgery, the notes had no significance. That testimony, standing alone, could give them no significance. Whether Vanderhoof was or was not corroborated with respect to the other notes, they were equally incompetent, since they were not a constituent part of the crime charged, or any inducement or fact leading to it, or in concealment of it, and were prejudicial to the defendant, since they exposed him to conviction by the jury upon evidence not touching the charge of which he was accused.

Both Vanderhoof and one Jones testified to their riding around together to visit certain customers of Vanderhoof in order to procure notes from them and failing to find any of them, Vanderhoof testified that in order to mislead Jones he inquired for one customer at the house of another, and thus failed to get any notes, and then put off Jones by telling him he would himself get the notes and send them to him, and that he afterwards sent or gave him forged notes. He testified that he did this at the suggestion of the defendant. It is plain that the corroboration by Jones of the fruitless journey, and of his subsequent receipt of the forged notes, is no corroboration of Vanderhoof's statement that he acted upon defendant's suggestion. Besides, none of these notes had any connection with the Van Auken note. If one forgery is proof of another one not connected with it, proof of one would suffice to convict the defendant upon the seventeen indictments against him.

The judgment should be reversed, and a new trial granted.

LEARNED, P. J., and MAYHAM, J., concurred.

Judgment and conviction reversed, new trial granted.