## Hinton v. Commonwealth.

May 24, 1949.

M. Hargett for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellant tried on an indictment charging grand larceny was found guilty, the jury fixing penalty at imprisonment for two years. Appellant insists that he is entitled to a new trial because: (1) The verdict is con-

trary to the law and evidence, and the court should have sustained his motion for a directed verdict; (2) Erred in permitting testimony in rebuttal. (3) The court gave erroneous and prejudicial instructions. Ground No. 1 is predicated upon the theory that the evidence of an accomplice was not fortified by any evidence tending to connect appellant with commission of the offense.

The chief witness, James Hamilton, was charged in a separate indictment with the same offense. He testified that one night in October 1948 he met up with appellant, with whom he was slightly acquainted, who said he had bought a car which needed a battery and knew where he could get one; they went to Mr. Peed's barn and "we got one out of a truck and one out of a tractor, and a tail light off of each of them." They loaded the articles in Hamilton's car and took them and Hinton to his home, and he (Hamilton) left for his home. Witness did not remember the day of the week or month.

Powell Owens testified that he lived about 100 yards from the home of Lloyd Hinton, uncle of appellant, with whom he lived. He said that he did not see appellant around the place for several days after the auto parts were taken. He and a man named Griffith found a battery under the edge of a culvert, near the Hinton home, and witness took it to his stripping room. Frank Peed, owner of the vehicles, testified that the morning after the parts were stolen some one called him up and reported that batteries had been taken from his trucks, and "if I would come out there he would show where they were." He called the sheriff and told him, "We knew where there was some stolen property. We went to the county judge and got a warrant and went back out there and the sheriff was there at James Hamilton's home. We had seen the wrenches and light and tractor battery in the car. He came out with the boy and put him in our car, and he came back and raised the hood of the car and there the battery was." They then went to Owens' barn and found the other battery. He said both batteries were of the value of about $48; he said that appellant was familiar with his premises.

Fay Hinton, a relative of appellant, was employed on the Peed farm; he went to the barn to get the truck out and found the battery missing; he went to the tractor

and found its battery gone. He said appellant and Hamilton were together the day before, riding up and down the road; he heard Hamilton's car three or four times that night.

Bessie Hamilton testified that on the night in question she and her sister were out riding with Hamilton and appellant; they went across the river to various places, and returned about 12:30 a. m. and took Hinton home. Hamilton had testified about these trips and that after the girls went home he picked up Hinton. Hamilton was recalled and said that he and Hinton only passed the Peed place once during the afternoon and night.

Hinton testified that on the day in question, October 21, at about 3:30 p. m. Hamilton and the two girls drove up to his uncle's home; he asked them to take him to Mayslick to cash a government check. After returning they took him home, and later they met and went across the river and visited road houses. That upon their return they took him home, and he went to bed. He denied that he had driven to or past the Peed home at night with Hamilton; in fact denied everything Hamilton had said, except as to the ride to Mayslick, and the later ride with the girls. He denied that he had told Hamilton that he was in need of a battery; said he had no use for one. Mrs. Lloyd Hinton, aunt of appellant, said Hamilton and the girls came to her home about 8:00 p. m. They returned about 12:30 ''slow time.'' She unlocked the door and let appellant in and he went ''right to bed,'' and never left the house until the next morning; her testimony was corroborated by her husband.

The testimony in rebuttal was that of the deputy who arrested Hinton. He had testified in chief as to the arrest. After appellant had closed he was recalled, and over objection to his appearance as a witness in rebuttal he was asked what appellant had said at the time, and answered: ''We told him we had a warrant for him, and he said he wasn't going, he would die before he would go. We went into the house and persuaded him to go with us. He did not say he was guilty.''

Appellant on cross-examination had testified partly to the same effect, but denied that he had said he would

die before he submitted, or that the officers "would have to kill me first." If this testimony was admissible it was only so for the purpose of contradiction and not as substantive evidence. We have held that flight by the accused, or a confession, or having in possession the stolen property, was competent as tending to connect accused with commission of the offense. Conrad v. Com., 287 Ky. 848, 155 S. W. 2d 454; Hunt v. Com., 288 Ky. 138, 155 S. W. 2d 732. We have not held that such statements as were attributed to appellant constitute substantive, connecting evidence.

Instruction No. 3 attacked by appellant, reads in part: "The witness James Hamilton being, according to his testimony, an accomplice of defendant Marshall Hinton, a conviction cannot be had upon his testimony" etc. Then follows the language of Sec. 241, Criminal Code of Practice. The contention of counsel is that it carries to the jury strong implication of the guilt of Hinton, and while we doubt that the jury had this conception, the instruction should have been framed in the language of the Code, accompanied by a definition of the word "accomplice," or in the form laid down in Sec. 946 Stanley's Instructions to Juries, approved in Taylor and Martin v. Com., 229 Ky. 98, 16 S. W. 2d 778, and consistently followed by this court.

Counsel for appellant forcefully, and we think correctly, contends that there was lacking sufficient corroborative testimony tending to connect appellant with the commission of the crime, and we agree. The established rule in this character of cases is that in determining whether the accomplice's testimony is sufficiently corroborated, is to eliminate the testimony of the accomplice, and then measure the other testimony to ascertain if it tends to connect the accused with the commission of the crime charged. Conrad v. Com., 287 Ky. 848, 155 S. W. 2d 454; Bowman v. Com., 309 Ky. 611, 218 S. W. 2d 666. Our measurement of the supporting evidence falls short of meeting the test, hence we are compelled to reverse; if upon another trial the testimony is the same or of no more forceful legal effect, the court should direct acquittal.

Judgment reversed.