87 So.2d 659

**Willie James LUCIOUS**

v.

**STATE.**

**6 Div. 150.**

Court of Appeals of Alabama.

May 22, 1956.

Walter B. Henley, Tuscaloosa, for appellant.

John Patterson, Atty. Gen., and Robt. Straub and Edmon L. Rinehart, Asst. Attys. Gen., for the State.

## HARWOOD, Presiding Judge

The indictment against this appellant contained three counts charging him respectively with burglary, grand larceny, and receiving and concealing stolen goods, knowing them to have been stolen.

The jury returned a verdict finding him guilty under count 3, which was the receiving and concealing count.

The evidence presented by the State consisted of the testimony of the investigating officers, and of John Albert Lucious, a brother of this appellant, and clearly an accomplice of the appellant if the appellant be guilty.

John Albert Lucious, the accomplice, testified that he lived in Tuscaloosa with his sister Bertha Lee White. That on Sunday, 18 October 1955, the appellant came to Bertha Lee's house around 9 in the morning. Shortly thereafter the appellant left to drive Bertha Lee, her husband, and children to their parents' place about 12 or 14 miles west of Tuscaloosa, using appellant's Chevrolet for this purpose.

It is inferable from John Albert's testimony that appellant returned to Bertha Lee's house, for he testified that about dark Curtis Jemison came to Bertha's house and told him and the appellant he knew where they could get some money. Upon being asked where, he stated at the Cue Pool Room.

Between 9 and 10 p. m., according to John Albert, he, Curtis Jemison, and appellant, with the appellant driving, went in John Albert's car to the Cue Pool Room.

They broke and entered the pool room and took therefrom a cigarette vending machine.

They drove down the Foster's Ferry road, pulled off into the woods and broke open the vending machine, removing $3.90 in change, and some 200 packs of cigarettes therefrom.

They then drove back to the Warrior river, and dumped the vending machine in the river. The change was divided among the three, and they then drove to the vicinity of the farm home of Will Lucious, father of appellant and John Albert, and hid the cigarettes in a weedy ravine about two hundred yards from the house. They remained in the car until about 5 o'clock in the morning, and then went into the house.

Although John Albert had never stayed at his father's home before, he remained there some two weeks. Upon coming to Tuscaloosa at the end of that time he was arrested late at night. He and Jemison admitted the burglary in question, and others committed by them, and led the police officers to the hidden cigarettes.

The testimony of the arresting officers related to the finding of the cigarettes at the place to which they were led by the accomplice after his arrest.

For the defense Bertha Lee testified that the appellant had not come to her house on the Sunday in question, as recounted by John Albert, but that one Dee Spencer had driven her to her parents' house that day, as he had been doing for some time. The appellant was at her parents' home when

she arrived, remained there during the day, and was in bed when she left about 10 p. m. that night.

Dee Spencer testified to like effect.

Likewise, Will and Pearly Lucious, appellant's parents, testified to the appellant's presence at home the entire day and night on the Sunday in question.

The evidence presented by the defense further tends to show that for some time the appellant had lived with his parents. He assisted his father about the farm and held regular jobs as a lumber truck driver. He rarely left the home at night except for occasional visits to a neighbor's house.

On the other hand John Albert had never stayed at his parents' home but lived usually at the home of his sister Bertha Lee, in Tuscaloosa. According to Bertha Lee, John Albert "laid out" most of the nights, had no employment, and spent most of his time with Curtis Jemison. She prohibited Jemison from visiting her house because of his thieving proclivities.

Section 307, Title 15, Code of Alabama 1940, provides:

"A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

In Sorrell v. State, 249 Ala. 292, 31 So.2d 82, 83, Justice Simpson wrote:

"The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt. [Numerous authorities from this and other states are cited in support of the above enunciated principle.]"

A review of the evidence readily demonstrates its insufficiency in meeting the requirements of Section 307, supra, and the decisional gloss surrounding it.

Merely finding stolen property where an accomplice states that he and an accused had hidden it in nowise tends to corroborate the accomplice. Such evidence emanates merely from the bare statements of the accomplice. Lotz v. State, 23 Ala. App. 496, 129 So. 305.

The Attorney General argues that the jury was justified in concluding that the appellant was in constructive possession of the cigarettes by virtue of their being found within 200 yards of the house wherein he lived, and that this fact sufficiently corroborates the accomplice's testimony.

Such argument is specious. It cannot rationally be inferred that the location of stolen goods secreted some 200 yards from the house in which appellant dwelt with several other persons could constitute the appellant as the constructive possessor of such goods. So far as disclosed by the record the appellant did not even have dominion over the place where the cigarettes were found.

Even had the cigarettes been found in such circumstances as to have raised an inference of constructive possession, such as in a house in possession of the accused, the further burden was upon the State to show to the required degree the guilty knowledge or scienter of the accused by showing facts or circumstances enabling the jury to conclude beyond a reasonable doubt the existence of scienter on the part of the accused. This for the reason that judgments of guilt in criminal cases cannot rest upon speculation, surmise, or suspicion. Grimes v. State, ante, p. 94, 76 So.2d 684.

Only in the testimony of the accomplice can such scienter be inferred in this case.

■ Whether there is evidence sufficient to corroborate the evidence of an accomplice, and tending to connect the accused with the offense charged is a question of law for the court.

■ There being no evidence in this case other than the testimony of the accused, tending to connect this appellant with the offense for which he was convicted, we are clear to the conclusion that the lower court erred in refusing appellant's timely motion to exclude the evidence and discharge the appellant, Lotz v. State, supra; Harris v. State, 21 Ala.App. 67, 105 So. 389, and in refusing his request for the general affirmative charge.

Reversed and remanded.