172 So.2d 796

Thomas G. EVANS

v.

STATE.

5 Div. 632.

Court of Appeals of Alabama.

March 9, 1965.

588

J. Sydney Cook, Jr., Auburn, Walker & Hill, Opelika, Rogers, Howard, Redden & Mills, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

Evans was convicted under an indictment charging him with forging an instrument having testamentary effect. Found guilty, sentenced to five years imprisonment, he appeals from conviction and the overruling of his motion for new trial.

Zebulon Judd died September 5, 1960, intestate with some fifty-nine claimants for his lands, goods and chattels of a value of some $500,000.00.

Evans filed May 3, 1961, in the Lee County Probate Court a petition praying that an instrument therewith surrendered be probated and admitted to record as the true last will and testament of Judd.

The instrument appears in the indictment, and came in evidence as State's Exhibit No. 1, viz:

## Evans of Auburn, Inc. 378
### (By the Grace of God)
### Chicken Coop Rental Service

4

PHONE 2495
P. O. BOX 910
AUBURN, ALABAMA

State's Exhibit
No. 1

December 9, 1958.

Recieved for Tom Evans $5000.00 cash and other past monies not credited to Tom Evans account and other valuable considerations, including one half of all profits from the sale of chicken coops, wooden dowels or any other enterprise Tom Evans may engage in and financed by me.

I the undersigned Zebulon Judd agree and certify that I being of sound mind and well in body agree of my own will to the following.

That at my departure of this life I will leave to Tom Evans my business partner, all of my earthly possesions, including all Real Estate all personal property, all monies in cash, stocks and bonds.

This agreement will if complied with by Tom Evans (by giving to me Zebulon Judd one half of all profits he may earn during my lifetime) supersede any will or agreement made heretofore or hereafter. I therefore the undersigned agree not to jepordize this agreement in anyway.

Signed.

FILED IN OFFICE THIS

3 day of May 196 1

Judge of Probate

Witness....

4/25/59/.

RECORD

This indictment is the short form prescribed by Code 1940, T. 15, § 259, No. 64, catchlined "Forgery of will, deed, note, bill, bond, receipt, or other written instrument," and is cross referenced to T. 14, § 200. This latter section reads:

"§ 200. Any person who, with intent to injure or defraud, falsely makes, alters, forges, counterfeits, or totally obliterates any will of real or personal property, or any deed, conveyance, or other instrument, being or purporting to be the act of another, by which any right or interest in property is, or purports to be transferred, conveyed, or in any way changed or affected; or any bond, bill-single, bill of exchange, promissory note, or any indorsement thereof, the forgery of which does not constitute forgery in the first degree; or any warehouse receipt, or receipt for the payment of money, or any instrument or writing, being or purporting to be the act of another; or any entry in any book account, by which any pecuniary demand or obligation is or purports to be created, increased, discharged, or diminished; or who, with such intent, utters and publishes as true any falsely made, altered, forged, or counterfeited instrument, writing, indorsement, or entry, specified or included in this section, is guilty of forgery in the second degree."

The State apparently relies upon Evans's having supposedly made an admission against interest which furnishes corroboration of Chandler, the State's main witness. Snoddy v. State, 75 Ala. 23; Harris v. State, 32 Ala.App. 519, 27 So.2d 794.

Evans, in testifying, admitted that the paper on which the State's Exhibit No. 1 was typed up and signed was not delivered to him by Mr. Elmer Sellers, a job printer of Auburn, Alabama, until sometime in January, 1959. This the State contends is contradictory of and establishes fraud in the use of the stated date, "December 9, 1958," at the top of Exhibit 1.

## I.

### The State's Evidence

The alleged scheme required the complicity of the subscribing witness, Herman Chandler.

Chandler testified that in April of 1958 Judd had him witness Judd's signature to a paper. "It was a one page paper * * * it was a note that Mr. Evans owed Doctor Judd. Further down toward the end it was agreement to leave each other the coop factory in case of one of them's death, the other one got it all."

Chandler recalled asking Judd if he was making out a will. To which Judd rejoined laughingly, "Well you can call it that."

Chandler denied that what he saw at that time was the instrument set out in the indictment, Exhibit No. 1, supra. The paper he saw then (April, 1958) had no letterhead on it.

On the 27th of March, 1961, some six months after Judd's death, Chandler testified that Evans called him asking him to come to his place of business. Thence the two men rode in Evans's car. The record then shows:

"A  He told me that he had a paper that he would like to get me to sign. And I took the paper and read it. It is the paper that I just saw there, that you showed me.

"Q  That is State's Exhibit one? [See above for text.]

"A  Yes, sir. And I asked him if that was legal, for me to sign that paper. He said that they had found a law that I did not have to be—a witness did not have to be in the presence of the maker of the paper or of the other witness of the paper. And he said that he wanted to use this paper, because the lawyers for the estate were trying to prove Doctor Zebulon Judd insane at the time of the first paper. And he wanted to use

this paper—the words he used were, to throw in their lap, to show that he could not be insane two different times. And I signed the paper.

"Q That is your signature there on State's Exhibit one?

"A Yes, sir. That is my signature.

"Q I show you State's Exhibit one and ask you if that is the paper that you signed?

"A That is the paper I signed on the 27th of March, 1961.

"Q Now, did you later have a conversation with Tom Evans?

"A Well, that same day we went up to Mr. Sid Cook's office and I signed another statement in his office. That he typed out himself.

"Q You signed a statement.

"A In Mr. Sid Cook's office. Which is also dated the 27th of March, 1961.

"Q And what was the contents of that statement that you signed there? What was it?

"A It was stating what I testified as of the paper I signed in 1958. And it was not dated. Where it says on or about on that paper, there is no date there, which I said, do not include a date there, I am not sure of the date until I go and check with the company and find out when I actually signed that paper. In 1958."

An oddity of the so-called 1958 paper was that Chandler described it in terms of a contract for mutual testamentary disposition of the chicken coop factory. Yet, his testimony never refers to Evans's having signed it.

The State Toxicologist, Dr. Rehling, was called and gave as his opinion that all signatures were genuine. He testified that the typewriter used was an L. C. Smith machine. Dr. Rehling observed an Underwood typewriter at Dean Judd's home; its lettering was quite different in character from that appearing on State's Exhibit No. 1.

After the State had first gone into the matter, the defense showed by a certified copy of a judgment that Chandler had been convicted of robbery in Georgia.

The trial court judge charged the jury:

"* * * The evidence shows that he had been convicted of a crime involving moral turpitude. That is, he had been convicted of the crime of robbery, which is a crime involving moral turpitude. Now Gentlemen of the Jury, that conviction of that crime did not render him incompetent to testify as a witness. The evidence as to his former conviction of a crime involving moral turpitude only goes to his credibility. And that is for you Gentlemen of the Jury to determine, the credibility of his testimony."

See Code 1940, T. 7, § 434.

II.

Corroboration of Accomplice

Before reviewing the facts falling under the requisites of T. 15, § 307, we shall analyze its principles. This section reads:

" § 307. A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

■ The first question is as to the seriousness of the crime charged: § 307 applies only to felony. Hence, if the question is presented only by a request to the trial judge for the general affirmative charge as to the entirety of a count, it must then be clear that the accusation embraces no lesser included misdemeanor.

Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712.

The second enquiry then leads us to examine Wigmore's "testimonial source," i. e., as to whether or not the witness is an accomplice. Axiomatically, if he is not an accomplice, his testimony is entitled to credit alone.

Conversely, the accomplice alone cannot be the source of corroboration. Thus, in People v. White, 62 Hun 114, 16 N.Y.S. 571, a forger who testified that the defendant had forged some other notes failed thereby to meet the test because there was no other evidence respecting these other notes, and even though they were extrinsic to the charge, they failed to have an independent standing as the occasion of their coming into evidence.

Another accomplice's testimony may be cumulative but cannot be corroborative. Morris v. State, 17 Ala.App. 126, 82 So. 574.

The third enquiry relates to the tenor of the testimony, both that given by the accomplice and that which is offered to corroborate him. This is the substance of treatment in most opinions.

From Sorrell v. State, 249 Ala. 292, 31 So.2d 82, we are indebted to the scholarship of Mr. Justice Simpson for the minimum requisites of the corroborative (or corroboratory) testimony:

a) Fact (or circumstance) of substantive character;

b) Fact (or circumstance) tending to prove guilt;

c) Fact (or circumstance) which is unequivocal (and certain) in character (i. e., inconsistent with the innocence of accused);

d) Fact (or circumstance) tending legitimately to connect defendant with crime (must do more than raise a suspicion of guilt);

e) *Semble,* opinion evidence alone to corroborate must concern itself with some object or fact (i. e., an opinion, standing by itself, of a trait or likelihood of human conduct would be not of substantive character).

See also McElroy, Law of Evidence in Alabama (2d Ed.), § 300.01.

For present purposes, the application of the statute (§ 307) can probably better be illustrated by those cases where the prosecution has been held to have failed to meet this burden of proof rather than by those in which sufficient corroboration was found.

Under Marler v. State, 68 Ala. 580, sought for corroboration failed because the State's evidence was deemed by Mr. Justice Somerville to be "per se irrelevant." The testimony so characterized tended to show the accomplice to be guilty: it amounted to a confession. No connection with the defendant—apart from the accomplice's conversation—was established. A like echolalic mode of proof was attempted in Adams v. State, 23 Ala.App. 477, 127 So. 254.

Lindsey v. State, 170 Ala. 80, 54 So. 516, says in part:

"* * * But it certainly cannot be plausibly argued that the defendant's presence early in the night at a public place, such as a railway station, in company with others at train time, even though the scene of the crime be near at hand, itself tends in the slightest degree to connect the defendant * * *.

"* * * to allow a conviction on the testimony submitted in this case would pave the way for its complete destruction and consignment to the legislative trash pile. * * *"

See Kemp v. State, 24 Ala.App. 591, 139 So. 437; Commander v. State, 28 Ala.App. 42, 178 So. 241; Wildman v. State, ante p. 357, 165 So.2d 396.

Thompkins v. State, 7 Ala.App. 140, 61 So. 479:

"\* \* \* The only corroboration \* \* was an old broken pair of wire stretchers in the defendant's yard, \* \* \* and the testimony of the rural mail carrier that shortly after the burglary the defendant or his wife had sent off by him two money orders, each for the sum of $2. \* \* \* The denomination of the money taken from the store was not known, and the kind of money paid for the money orders was not proven. \* \* \*

"\* \* \* The accomplice, \* \* \* had ample opportunity to know of \* \* [the stretchers] and may reasonably have undertaken to give color to his statement by such testimony. \* \* \*"

Wallis v. State, 18 Ala.App. 108, 90 So. 35:

"\* \* \* about 200 yards from the store [burglarized] a barefooted track was found in the road leading in the direction of defendant's home. There was no peculiarity about the track, nor was it shown to have been made by the defendant, \* \* \*"

See Parish v. State, 28 Ala.App. 81, 179 So. 387 ("boy tracks").

In Alexander v. State, 20 Ala.App. 432, 102 So. 597, Harris v. State, 21 Ala.App. 67, 105 So. 389, Doss v. State, 23 Ala.App. 168, 123 So. 237 (cert. den.), Jones v. State, 23 Ala.App. 395, 126 So. 178, Hawthorn v. State, 26 Ala.App. 590, 164 So. 308, Gray v. State, 27 Ala.App. 232, 170 So. 75 (cert. den.), and Jones v. State, 30 Ala.App. 360, 6 So.2d 26, the opinions are conclusory, reflecting only a vain search of the record for corroboration. We noted the denial of certiorari as having possibly more weight because of a reversal without setting out what the Attorney General with his expertise might have contended before the Supreme Court was corroborative. See Ex parte State ex rel. Atty. Gen., 248 Ala. 144, at 148, 26 So.2d 608.

Stolen property cases involve special considerations, e. g., Parish, supra; and Lucious v. State, 38 Ala.App. 484, 87 So.2d 659.

Cases involving a proffering of conglomerate circumstances not sufficing are: Sorrell, supra; King v. State, 23 Ala.App. 55, 120 So. 466; Fitts v. State, 24 Ala.App. 405, 135 So. 654; Parish, supra; Brown v. State, 31 Ala.App. 529, 19 So.2d 88 (motive alone is not enough to corroborate).

In Sorrell v. State, 249 Ala. 292, 31 So. 2d 82, we find the following yardstick:

"We think the following text soundly states the principle and is particularly applicable to the case at bar: '\* \* \* the proper test in determining whether there was sufficient corroboration of the testimony of an accomplice, according to statutory requirements, is first to eliminate the evidence of the accomplice and then, if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.' 2 Wharton, Criminal Evidence § 752, 11th Ed."

The Court of Appeals in Hinton v. Commonwealth, 310 Ky. 435, 220 S.W.2d 1004, per Morris, Commissioner, has voiced virtually the same test:

"\* \* \* The established rule \* \* \* that in determining whether the accomplice's testimony is sufficiently corroborated, is to eliminate the testimony of the accomplice, and then measure the other testimony to ascertain if it tends to connect the accused with the commission of the crime charged. \* \* \*"

Applying a similar statute, the Texas Court of Criminal Appeals said, in Thomas v. State, 166 Tex.Cr.R. 331, 313 S.W.2d 311:

"In construing such statute, this Court has consistently applied the following rule: 'The test as to the sufficiency of the corroboration long recognized as correct by our courts is to eliminate from consideration the evidence of the accomplice and examine the testimony

of other witnesses with the view of ascertaining if from them comes incriminating evidence which tends to connect accused with the commission of the offense. If so, the corroboration is sufficient; otherwise, not.' * * *"

■ Considering these principles as applied here to the circumstance of the paper having typed on it a date going back to a time before the letterhead came into Evans's hands, is a matter of curiosity. But it is not corroborative of Chandler's not witnessing it until after Judd was dead.

Antedating is a not uncommon practice in drawing up papers. Cf. N. I. L. § 12, Code 1940, T. 39, § 16, which reads:

"§ 16. The instrument is not invalid for the reason only that it is antedated or postdated, provided this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered acquires the title thereto as of date of delivery."

Act No. 658 of September 6, 1961, § 11, calls for back da*ed bonds ("may be sold [below par] plus accrued interest thereon to the date of delivery thereof"). Acts 1961, at p. 811.

That one dates a note back so that it bears back interest does not invalidate the note. Rathfon v. Locher, 215 Pa. 571, 64 A. 790.

The antedating of insurance policies to dates before delivery imparts "manifestly no essential illegality in such contracts." New York Life Ins. Co. v. Franklin, 118 Va. 418, 87 S.E. 584.

■ The burden of showing an illegal or fraudulent purpose in the circumstance of the use of December, 1958, date rested on the State. Rathfon v. Locher, supra.

No peculiar advantage to Evans from the antedating—aside from reflecting the date of his advancing money to Judd—is made to appear. Hence, no overreaching as in Executors of Williams v. Williams, 15 N. J.Law 255, is shown.

Only Chandler's testimony of attestation after Judd's death and destruction of the April, 1958, paper impart a sinister aspect to the backdating. Analytically, this is but Chandler corroborating Chandler.

The requisites of § 307 have not been met.

## III.

### Claimed Fisticuffs Between Counsel in Presence of Jury

Toward the end of the trial, some effort seems to have been made to obtain the attendance for testimony of an attorney who had some familiarity with the various transactions.

On the record before us, it is not clear as to whether or not, had he been subpoenaed, he would have been able, on account of the attorney-client privilege, to have testified. The trial ended without his being called.

One of the defense counsel apparently chided the circuit solicitor regarding the matter and as the jury was filing out of the room for a recess, it seems that the solicitor swung his fist at this attorney. Whether or not there was physical contact to constitute an assault and battery is in dispute.

A motion for mistrial was made by the defense. The trial judge instructed the jury to disregard the incident, as well as all other interchanges between counsel, and overruled the motion.

The matter came up again on the motion for new trial at which time the trial judge considered the affidavits of the two antagonists and referred to other incidents during the trial to support the conclusion that the event was not harmful to the defendant.

The trial judge concluded in this order that the affair had been provoked by defense counsel. We note that throughout there were numerous asides and volunteered remarks, though not all of them from defense counsel only.

In view of the conclusion we have reached above as to other error, we forego determining, since it would be speculation, whether or not, as a matter of law, this conduct was prejudicial to any substantial rights of the defendant. Hayes v. State, 225 Ala. 253, 142 So. 675.

At the risk of being didactic, we point out for counsel that while it has been said that a trial at law is not of the decorous nature of a social tea party, nevertheless the origins of courtroom conduct adhere basically to the pertinent rules of parliamentary law. Code 1940, T. 46, § 43(2) and (5); Code of Ethics, Alabama Bar, 7, 26, 28 and 29.

We have dispensed with monarchy and courts of law do not go through the stilted rituals and conventions of the courts of love of the Troubadours or Eleanor of Aquitaine. Yet, historically the main rule of conduct, when a trial court is in session, is for the speakers to address the presiding judge only, except as he may expressly permit otherwise. See Jefferson's Manual.

Thus it is that witnesses are turned over to counsel for interrogation. The attorney for the party who has had the court call the witness first propounds questions and receives the answers without interruption, except as objections are put to the trial judge.

Arguments as to motions and arguments to the fact finding part of the court, i. e., the jury, are properly couched in the prefatory terms of, "May it please the court."

These are matters which rest essentially and almost irrevisably in the discretion of the trial judge. Whether or not he is a Martinet who will not let the jurors remove their coats and loosen their neckties, or is one who lets those in court smoke and the lawyers sit down when examining a witness are essentially matters not for appellate review.

So it is when confronted with a rough and tumble record showing cross fire colloquies and wrangling disputations—e. g., remarks of counsel addressed directly to another—we must of necessity leave these things to the prophylaxis of the trial judge unless the quality of the expressions used, and not their manner of presentation, partakes of a prejudicial character, such as allusion to race or other invidious circumstances. Moulton v. State, 199 Ala. 411, 74 So. 454.

We are confident that such a situation will not present itself upon a further trial of this cause.

## IV.

### Conclusion

We conclude, because of the absence of any evidence corroborating the testimony of the State's witness, Chandler,. that the trial court was in error not to exclude the State's evidence on motion made therefor, and also in refusing the affirmative charge in this cause.

The judgment below is due to be reversed and the cause remanded.

Reversed and remanded.

JOHNSON, J., dissents.