291 So.2d 376

**King SEAWRIGHT**

v.

**STATE.**

3 Div. 239.

Court of Criminal Appeals of Alabama.

March 5, 1974.

Whitesell, Gordon & Gallion, Montgomery, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Samuel L. Adams, Sp. Asst. Atty. Gen., Dothan, for the State.

HARRIS, Judge.

This is another armed robbery case. Seawright was sentenced to life imprisonment. The only question presented is the sufficiency of the corroborative testimony of an accomplice.

The appeal to this Court is *in forma pauperis*. A free transcript was furnished and the attorney appointed to represent appellant at trial represents him on appeal by appointment of the trial court.

Around 7:00 P.M. on September 18, 1972, two black men entered the Kentucky Fried Chicken establishment on West Fairview Avenue in Montgomery. One man was tall and the other one was short. The tall man had a pistol. He walked to the cashier, pointed the pistol at her and ordered her to open the cash register. She opened the cash register and with the pistol still pointed directly at her the little man took approximately $506.00 in currency and ran out the front door. The tall man turned to the cashier and told her if she touched the telephone he would blow her brains out and he, too, ran out the front door. Both men ran down the side of the building toward the rear. Immediately upon their departure, the cashier called the Police Department and reported the robbery. An APB (all points bulletin) was put on the police radio. The broadcast was "code 3—Kentucky Fried Chicken". Code 3 is armed robbery. The description of the men was "two colored

males armed with a pistol, one tall and one short, ran out of the Kentucky Fried Chicken around to the back and were going south from behind the building."

Goode Street runs north and south and intersects Fairview Avenue close to the place where the crime was committed. In less than four (4) minutes after the police alert, a city detective spotted appellant driving a 1967 blue and white Chevrolet automobile on Goode Street several blocks south of Fairview Avenue. There were two black men on the backseat. This officer knew appellant and had known him for ten (10) years. He had arrested him on one prior occasion. The officer gave chase in an automobile which was unmarked. He followed appellant for several blocks at high speed. Appellant ran a stop sign at the intersection of Patton Avenue and Cleveland Avenue and turned north on Cleveland. The officer also ran the stop sign, turned his lights off and floorboarded his accelerator and overtook and stopped the fleeing car.

The officer got out of his car with his pistol in his hand. Appellant got out of his car and was cursing loudly and started running toward the officer. The officer pointed the pistol at appellant and ordered him to put his hands up and to back up to the car. Appellant continued to curse and said, "No, man, you've got me wrong. You've got me wrong. What is it, man. What is it." The officer replied, "An investigation of armed robbery." At this point the two blacks in the backseat were cursing and started to get out of the car. The officer pointed his pistol at them and ordered them to stay in the car. Appellant shouted, "Get out of my car. Get out of my car and go." The officer asked appellant who these two men were and he said he did not know them. Appellant told the two men five or six times to get out of his car and go saying, "You'll go. I don't know you. I don't know nothing about no armed robbery. You all go. You don't know nothing about no robbery." Every

time appellant told the men to leave, the officer would tell them to stay in the car. These men disobeyed the orders of the officer. The officer saw one of the men throw something from the car and it fell close to a nearby fence. The object thrown looked like a pistol. Finally the men heeded appellant and got out of the car and one of them rushed the officer and had his head on the officer's chest. The officer threw him on the street and subdued him. He told all three men they were under arrest for armed robbery. Another police car arrived and appellant was put in the detective's car and the other two men were handcuffed and put in another police car. The detective told the other officers that he was going to carry appellant to headquarters and for them to search appellant's car and see if they could find the object that one of these men had thrown near the fence. Money amounting to $496.00 was found in a wad on the backseat. While enroute to headquarters, the detective received a radio dispatch relating the fact that the officers had found a pistol near the fence. The detective returned to the scene and got the pistol and the money. These were admitted in evidence without objection.

The detective gave appellant the *Miranda* rights and asked him if he wanted to tell him about it. Appellant told the officer, "I don't know nothing. I never seen these guys before in my life. I was riding down the street and they flagged me down and they said, 'Hey, man, give me a ride. We'll give you a dollar.'" Appellant said he told the man, "Okay, jump in and I'll give you a ride." He said one of the men wanted him to take him to his sister's house in Ridgecrest. Appellant further told the officer that he picked the men up on Goode Street just as he pulled out of Kohn Street. The officer told appellant that he didn't believe him as it would have taken him much more time to get to the place where the officer first saw him from the time he received the radio message and the officer was going to check the neigh-

borhood to see if he knew these men and if he had been in the vicinity of Kohn Street that night. Appellant then changed his story and said he had seen these men on different occasions and had shot pool with them and further these men flagged him down on Goode Street near Fairview Avenue. This point was much closer to the place that was robbed.

When the other two men got to headquarters, they were given the *Miranda* rights and were identified as James Lewis, Jr., and Andrew Brown, alias James Simpson. A line-up was conducted a short time later and the cashier and a lone customer of Kentucky Fried Chicken at the time of the robbery, positively identified these two men as the robbers.

Lewis signed a written statement in which he confessed the crime and implicated both appellant and Brown, alias Simpson. During appellant's trial Lewis testified as a state's witness. Brown, alias, was put on the stand at the request of appellant but upon the advice of his own lawyer he invoked the Fifth Amendment and refused to testify.

According to Lewis' statement and testimony, appellant was his cousin and he was standing on the corner of Goode and Jeff Davis Streets at 5:30 P.M. on September 18, 1972, when appellant drove up in his car with Brown, alias Simpson, and another black man. He got into the car and they started riding around. Lewis said appellant and Brown were talking about robbing some place. Brown had a pistol. They were discussing robbing Moseley's store but Brown got cold feet because there were too many people there. Lewis said appellant was put out with Brown because he would not pull a robbery by himself and that he wanted some wine to bolster his courage. Brown said he was not going to rob any place by himself and appellant took the pistol from Brown, unloaded it, and put it under the front seat of the car. They went to the State Store on Mildred Street at Cleveland Avenue and got another bottle of wine and bought a gallon of gas. Lewis told appellant that he and Brown would rob a place and they decided to rob the Kentucky Fried Chicken place. Appellant drove around this place and showed Lewis and Brown the way to go after the robbery and he would pick them up on Goode Street. Lewis and Brown got out of the car and started to go into the place. Lewis was carrying the pistol. Before they got to the door, appellant told them to come back that it was not dark enough. They re-entered appellant's car and then went to appellant's home. After being there awhile appellant said, "It is dark enough now. Let's go." Lewis and Brown entered the place and Lewis held the pistol on the cashier while Brown took the money from the cash register. After the robbery Lewis and Brown followed the route as pointed out to them by appellant, but when they got to Goode Street, appellant was not there. They moved out of the street to the yard of a house close by. In a few seconds appellant drove up. They ran to the car and one of them started to get in the frontseat but appellant told both of them to get in the backseat. As they were driving away appellant asked them if they got the money and Lewis said, "Yeah", and tried to give the pistol to appellant. Appellant told them to keep everything on the backseat. As they proceeded down Goode Street, appellant said, "We are being followed. Don't look back because I think it is the police. Just be cool." Lewis further testified that appellant said, "If the man stops us I am supposed to be taking you over to Brown's sister's house." Lewis said he looked back and saw a plain police car. He said that when they were stopped he threw the pistol over by the fence.

The day before appellant's trial Lewis was convicted by another jury in another courtroom and had been sentenced to life imprisonment. He was asked why he

agreed to testify for the State and his answer was, "Because I feel like I got life and he started it all by me getting in the car with him. I think he should be punished too."

Both appellant and Lewis had a prior felony conviction and had served time in the penitentiary. According to a statement by the trial judge at the time he sentenced him in the present case, the court told appellant that he was twenty-six years of age and that since 1964 he had been arrested twenty-six times for various misdemeanors and felonies including several charges for robbery. The original charge resulting in a sentence to the penitentiary was robbery reduced to grand larceny to give him a chance to rehabilitate himself.

The tendencies of the evidence in this case show that the scheme to rob some place on September 18, 1972, originated in appellant's mind and that he masterminded the execution of the scheme.

Appellant testified in his behalf and denied that he had anything to do with the robbery and denied that he had driven around the premises of the Kentucky Fried Chicken place on the night of the alleged robbery. He said that around 7:00 P.M. he was driving on Goode Street approaching Fairview Avenue; that his destination was the Krystal Drive In to get something to eat. The Krystal is located just west of the Kentucky Fried Chicken; that when he got near the Blue Moon on Goode Street, Lewis and Brown, alias Simpson, flagged him and offered him a couple of dollars if he would drive them to Ridgecrest to the home of a sister of one of them; that he was merely on his way to Ridgecrest when he was stopped by the police officer. He denied that he made any statements to Lewis and Brown at the scene of the arrest as testified to by the officer; that he did not "rush" the officer and the officer did not point a gun at him and that he did not tell the occupants of his car to try and

make their get away; that as a matter of fact he cooperated with the officer in every respect and even physically held Lewis on orders of the officer. In sum, he was just a victim of circumstances beyond his control. He just happened to be at the wrong place at the wrong time and was ensnared in a tangled web of criminality that was not his choosing.

The money found in appellant's automobile a few minutes after the robbery must be deemed in his constructive possession. Lawson v. State, 38 Ala.App. 322, 82 So.2d 812.

In English v. State, 38 Ala.App. 377, 84 So.2d 673 this Court said:

"* * * The reasonableness of evidence presented by the appellant explaining such possession (recently stolen goods) was for the jury. If the explanation failed to satisfy the jury this possession would also furnish further corroboration of the testimony of the accomplice."

In Phiffer v. State, 44 Ala.App. 611, 217 So.2d 823, this Court said:

"The uncontroverted fact that the appellant was arrested along with the two alleged accomplices while riding in the vehicle which contained the stolen property in question is sufficient corroboration upon which to sustain a conviction."

In the leading case of Slayton v. State, 234 Ala. 9, 173 So. 645, in dealing with the question of corroborative evidence of an accomplice, the Supreme Court held:

"It should be kept in mind that corroborative evidence of an accomplice is of two kinds. One includes facts and circumstances ascertained in checking up on his version of the affair, matters tending to support the truth of his testimony, or vice versa. The competency of this class of circumstantial evidence does not turn on whether it tends to connect

the defendant with the crime. The other class, one essential to conviction, is corroborative evidence which does tend to connect the defendant with the crime. This latter class must be proven beyond a reasonable doubt. As to the other, the jury may not believe the evidence of the accomplice beyond a reasonable doubt with respect to details, but still believe his evidence on the facts essential to a conviction beyond a reasonable doubt, and, if corroborated as the law requires, a conviction should follow. * * *"

■■ Corroborative evidence necessary to justify admission of an accomplice's testimony need not be strong or sufficient in and of itself to support a conviction but the only requirement is that it legitimately tends to connect the accused with the offense. A liberal construction is to be accorded the statute requiring that the testimony of an accomplice be corroborated by other evidence. Magouirk v. State, 49 Ala.App. 420, 272 So.2d 625; Cameron v. State, 49 Ala.App. 482, 273 So.2d 242; Moore v. State, 30 Ala.App. 304, 5 So.2d 644.

There was no motion to exclude the state's evidence, nor was there a request for the affirmative charge. There were no exceptions to the oral charge of the court, nor was there a motion for a new trial. Eady v. State, 48 Ala.App. 726, 267 So.2d 516; Grant v. State, 46 Ala.App. 232, 239 So.2d 903.

■ It is difficult to see how the testimony of Lewis could have been more corroboratively strengthened by the evidence presented in this case except, possibly, by appellant's confession. The evidence by the State being sufficient, if believed by jury (and it was believed) under the required rule to warrant the jury finding the appellant guilty as an aider and abettor, this cause is due to be affirmed.

Affirmed.

All the Judges concur.