319 So.2d 734

**James BLEVINS, alias**

**v.**

**STATE.**

**8 Div. 642.**

Court of Criminal Appeals of Alabama.

June 17, 1975.

Rehearing Denied July 29, 1975.

Wesley M. Lavender, Decatur, Michael E. Sparkman, Hartselle, for appellant.

William J. Baxley, Atty. Gen. and Sarah M. Greenhaw, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Blevins was put to trial upon a three-count indictment charging (1) burglary, (2) grand larceny, and (3) buying, receiving and concealing stolen property. Prior to his arraignment he was found to be indigent and two lawyers were appointed to represent him. He pleaded not guilty. After conviction he was furnished a free transcript and trial counsel was appointed to represent him on appeal. He received an eight-year sentence in the penitentiary.

The facts are not in dispute. Appellant did not testify nor offer any evidence in his defense.

He did not make a motion to exclude the state's evidence. He did request the af-

firmative charge as to all counts in the indictment and make a motion for a new trial raising the sufficiency of the evidence to sustain the judgment of conviction. This compels us to a recital of the state's evidence.

On October 15, 1974, the home of Mrs. Becky Morrow Watwood in the Westpoint Community, Somerville, Route 2, of Morgan County, Alabama, was broken into and several articles of household furniture were taken out of the house. She testified she left home that morning at 11:30 and secured her home by locking all doors. She did not return home until around 10:00 the next morning and found a number of officers at her home. Upon inspecting her home, she found the back door had been broken open and the front door opened. Upon entering her house, she discovered the following items missing: an antique table and four chairs, a big basin bowl and pitcher, a saddle, cider mill, butter dish, a blacksmith's blower, and a number of other things. According to her testimony the missing property was worth well over $1000.00. As a matter of fact she stated the saddle alone cost $300.00.

She further testified that she knew appellant and had been around him on two occasions while she was visiting a Mrs. Ruby White but never more than twenty or thirty minutes. She identified him in court.

Mrs. Waltraud Hollein Westbrooks, who married a G. I. in Germany, had been living in Morgan City, Morgan County, for about seven months prior to October 15, 1974. She testified that appellant came to their home about 8:00 A.M. on the date of the burglary. He told her husband, Rayburn Westbrooks, that he had to get up some money to pay a speeding ticket. He asked Rayburn to drive him to the home of Ruby White. Rayburn and appellant got in Rayburn's pick-up truck and left. They did not return until 1:00 P.M. Appellant told the Westbrooks that he had to get up something to sell so that he could pay his speeding ticket fine. Appellant requested Rayburn to carry him to the Westpoint Community, but Rayburn told him he had lost his license and he might be stopped by the Highway Patrol and he refused to drive him. Appellant asked him if "Donna" (Mrs. Rayburn Westbrooks) could carry him and Rayburn agreed saying, "I don't want any foolishness and not to put anything in his truck."

Mrs. Westbrooks drove the pick-up truck carrying her four-year old son with them. The boy stood up on the seat of the truck between her and appellant. Appellant directed Mrs. Westbrooks to drive him to the home of Mrs. Becky Morrow Watwood and to pull into the front yard. She stopped the truck in the front yard and appellant got out and went on the porch and knocked on the door. No one came to the door and appellant walked around the house toward the back of the house. In a few minutes appellant came out the front door carrying a saddle and put it in the back of the pick-up truck. Mrs. Westbrooks protested and told appellant to put the saddle back; that Rayburn had told him not to take anything and put it on his truck. Appellant laughed at her and told her to stay there and to keep her mouth shut. He then returned to the house and got the other articles of furniture above described and put them in the back of the pick-up truck. Appellant covered the articles with a bedspread and a blanket and instructed her to drive him to the home of Mrs. Hazel Phillips in Hartselle, Alabama, giving her the directions. When they arrived at the Phillips home, appellant got out of the truck and had a conversation with Mrs. Phillips. Mrs. Phillips got a key and told appellant to follow her. Appellant got back in the truck and told Mrs. Westbrooks to follow Mrs. Phillips. Mrs. Phillips drove to an old store building and appellant told Mrs. Westbrooks to back the truck to the door of the store building so the truck could be unloaded. Appellant and Mrs. Phillips unloaded the stolen property from the truck and placed them in the store building. Mrs. Westbrooks never got

out of the truck either at the time the property was loaded on the truck or at the time it was unloaded and put in the store building. After the truck was unloaded, appellant made the statement that he was going to get $100.00 for the table and chairs.

Mrs. Westbrooks, appellant and Mrs. Phillips went to the home of Mrs. Phillips where Mrs. Phillips made a telephone call in their presence.

From the record:

"Q. Now, when you got to her house, what was said about a phone call?

"A. She made a phone call to some woman and told her she had the table and chairs already there and for her to have the money ready; and when she hung up the phone she told Jim it wouldn't be until after 5:00 o'clock when they get the money because she had to close the store at 5:00 o'clock. She said a woman was going to make out the check to her because he couldn't cash it. She was going to cash it at the San An Store down there at Phillips' Station.

"Q. All right. What then if anything did you all do?

"A. I was sitting there drinking coffee and him and Hazel went in the garage and talked. I don't know what about.

"Q. All right. Then what happened?

"A. When they come back she said she meet (sic) him on the mountain at 7:00 o'clock and bring him the money.

"Q. What else?

"A. So we left. He went back in the truck and we went home to my house.

"Q. Were you in the truck also? Were you driving?

"A. I was driving.

"Q. So, you and Chick (appellant) went back in the truck to your house?

"A. That's right."

Her husband was not at home and she figured someone had carried him to the Pink Pussycat Club in Madison County just across the Whitesburg bridge. She and appellant went to the club to get her husband. She went in the club and told her husband everything that appellant had done. While she was talking to her husband, appellant walked up and told Mr. Westbrooks that everything went smoothly and that he was going to get some money and split it with him. Mr. Westbrooks told appellant that he didn't want any of the —— —— money.

Mr. and Mrs. Westbrooks walked outside the club with Mr. Westbrooks carrying his four-year old son in his arms. Appellant came outside and Mr. Westbrooks told him that he didn't like what he had done in using his wife and truck to steal things after he had told him not to do so. Appellant then hit Mr. Westbrooks knocking him to the ground. The Westbrooks got in the truck and went home. Immediately upon arriving home Mr. Westbrooks called the Sheriff's Office and reported the burglary and theft and where the stolen property was stored.

Mrs. Westbrooks further testified that she had known appellant since he got out of prison and he worked with her husband. Appellant and her husband often drank together and when they were drinking they were very mean to her. She said that she was afraid of appellant as he had broken her thumb on one occasion. She admitted on cross-examination that she had been charged with the same offenses as appellant and was on bond during appellant's trial.

Two deputies responded to the call from Mr. Westbrooks and interrogated Mrs. Westbrooks. She told them the whole story from beginning to end and signed a statement. After the statement was signed, Mrs. Westbrooks went with the officers to the old store building where the officers were able to see the stolen property without entering the building. The officers sent for a truck from the jail and

loaded the stolen property. Mrs. Watwood came to the jail and identified the property as the same that was in her house prior to the burglary and the property was released to her.

The officers arrested appellant at the home of Mrs. Phillips on the night of October 15, 1974, between 11:30 and 12:00 P. M. They were asked to explain the circumstances of the arrest and replied:

"A. Yes sir. We asked Mrs. Westbrook (sic) where Mr. Blevins could be located. She said that she had left him in Huntsville and that we could check with Mrs. Phillips. I went to the Phillips' home that night around 11:00 o'clock and knocked on the door and Mrs. Phillips came to the door and opened it. Deputy McAbee and I were standing on the porch and she invited us in. I asked Mrs. Phillips if Jim Blevins was there. She didn't answer me. I asked her if I could look and she said go ahead. I looked into the kitchen, one bedroom and a bathroom. I then entered the bedroom on the north end of the house. I searched it and beneath the bed in that bedroom I found Mr. Blevins.

"Q. How was he dressed at that time?

"A. I believe Mr. Blevins was dressed in a pair of shorts and undershirt.

"Q. Uh huh. Now, what happened after that?

"A. I told Mr. Blevins to get dressed. That he had to go with me.

"Q. Did you arrest him at that time?

"A. Yes, sir."

Appellant was given the *Miranda* rights and warnings. He denied any knowledge of the burglary and theft.

Mrs. Audrey Barker was the last witness to testify for the state. In sum, she testified that Mrs. Watwood was her neighbor and lived about a half of a mile from her on October 15, 1974. She got off work about 1:30 to keep an appointment which required her to go home and change clothes. On her way home she came upon a pick-up truck being driven by a woman with a little boy standing up in the seat and a man on the passenger side. She observed the man as being tall and thin. She followed the truck for about a mile and saw the man constantly turning his head toward the driver and talking. During this mile, the truck was going at a very slow speed and she got a good look at the man in the truck. She was asked to look around the courtroom and see if she recognized that man. Without the slightest hesitation, she identified appellant as the passenger in the pick-up truck traveling in the direction of the home that was subsequently burglarized.

In *Wyatt v. State,* 51 Ala.App. 226, 283 So.2d 675, we stated the law to be in cases of this kind as follows:

"In *Slayton v. State,* 234 Ala. 9, 173 So. 645, in dealing with the question of corroborative evidence of an accomplice, the court said:

" 'It should be kept in mind that corroborative evidence of an accomplice is of two kinds. One includes facts and circumstances ascertained in checking up on his version of the affair, matters tending to support the truth of his testimony, or vice versa. The competency of this class of circumstantial evidence does not turn on whether it tends to connect the defendant with the crime. The other class, one essential to conviction, is corroborative evidence which does tend to connect the defendant with the crime. This latter class must be proven beyond a reasonable doubt. As to the other, the jury may not believe the evidence of the accomplice beyond a reasonable doubt with respect to details, but still believe his evidence on the facts essential to a conviction beyond a reasonable doubt, and, if corroborated as the law requires, a conviction should follow.'

"Under the statute requiring corroboration of the testimony of accomplices to

authorize conviction of a felony (Title 15, § 307, Code of Alabama 1940), the corroborative evidence need not be strong, nor sufficient of itself to support the conviction, the criterion being that it legitimately tends to connect the accused with the offense. 23 C.J.S. Criminal Law § 812(5), p. 125 (1961); *Moore v. State,* 30 Ala.App. 304, 5 So.2d 644.

"Nor need such corroborative evidence directly confirm any particular fact stated by the accomplice. *Skumro v. State,* 234 Ala. 4, 170 So. 776."

In 23 C.J.S. Criminal Law § 812(3), p. 109, the rule is stated to be:

"Any circumstantial evidence is sufficient to corroborate if it proves that the accused was connected with the criminal act, or tends to connect him with the commission thereof, or if such connection may reasonably or clearly be inferred from the corroborative evidence; and where the accomplice is strongly corroborated by facts and circumstances connecting the accused with the crime, a conviction will be sustained."

■ The testimony of an accomplice as to the defendant's part in the burglary was sufficiently corroborated by the testimony of Mrs. Audrey Barker who saw the accused in the pick-up truck in close vicinity of the home that was burglarized. *Segars v. State,* 19 Ala.App. 407, 97 So. 747; *DeGraaf v. State,* 34 Ala.App. 137, 37 So. 2d 130; *Ross v. State,* 74 Ala. 532.

Both the state and appellant treated Mrs. Westbrooks as an accomplice to the crime for which appellant stands convicted. From the record before us we are not in accord with such conclusion. Due to the particular circumstances in this case, we conclude she was no more than a pawn or robot in the hands of an ex-convict of whom she was afraid. She had no idea appellant was going to break into a home and steal items therefrom. When she saw appellant emerge from the Watwood home with a saddle in his hands and place it in the back of the pick-up truck, she protested his actions and reminded him of her husband's instructions not to put anything on his truck. She tried to get appellant to take the saddle back in the house, but he laughed at her and told her to stay there and to keep her mouth shut. Her sole role was that of an eye-witness to the commission of a crime of which she wanted no part. She was a war bride from Germany and could not read or write the English language and had difficulty in speaking the English language.

Assuming, without the necessity to decide, the non-accessorial status of Mrs. Westbrooks, there was ample evidence to connect appellant with the commission of the crime for which he was convicted. *Goodman v. State,* 52 Ala.App. 265, 291 So.2d 358; *Seawright v. State,* 52 Ala.App. 286, 291 So.2d 376.

■ No reversible error was committed in bringing appellant to court handcuffed prior to his trial. *Boswell v. State,* 290 Ala. 349, 276 So.2d 592.

Under the evidence in this case there was no error in refusing the affirmative charges. Neither was there error in overruling and denying appellant's motion for a new trial. *Clark v. State,* 54 Ala.App. 217, 307 So.2d 28; *Jones v. State,* 54 Ala.App. 251, 307 So.2d 59.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

The judgment of conviction is affirmed.

Affirmed.

TYSON, DeCARLO and BOOKOUT, JJ., concur.

CATES, P. J., not sitting.