### JIM BALLEW v. THE STATE.

No. 8243. Decided February 6, 1924.

Rehearing denied April 30, 1924.

**1.—Murder—Misconduct of Jury—Failure to Testify.**

　　Where defendant made a motion on account of the misconduct of the jury, trying him, in that they discussed his failure to testify, having been submitted to the trial judge the truth of the averments in the motion being controverted, and testimony introduced both by affidavits and orally and the motion overruled without showing abuse of discretion on the part of the trial judge, there is no reversible error. Following: Fox v State, 53 Texas Crim. Rep., 150.

**2.—Same—Defendant's Failure to Testify.**

The mention of the appellant's failure to testify, made, as in this case, after the jury had reached the conclusion that he was guilty and had determined that his punishment should be death or imprisonment for ninety-nine years, in view of the verdict, would not justify a reversal. Following: Wilson v. State, 87 Texas Crim. Rep., 538.

**3.—Same—Evidence—Cross-Examination—Husband and Wife.**

On cross-examination of the wife of the deceased, appellant asked her if it were not a fact that upon a certain occasion she attempted to shoot Will Chadwick in the back with a pistol, and that on another occasion she attempted to poison N. H. Hutson by placing glass in his milk, to which State raised objection which was sustained, there was no reversible error. Following: McAfee v. State, 17 Texas Crim. App., 139.

**4.—Same—Evidence—Practice in Trial Court.**

The fact that the shotgun which was used in the homicide and introduced in evidence remained in the courtroom until it was removed therefrom by request of the appellant, violates no rule of evidence.

**5.—Same—Length of Argument—Practice in Trial Court.**

After one of the counsel for the appellant had spoken for an hour and ten minutes, the court drew his attention to the fact that the time tentatively agreed upon for discussing the facts before the jury had expired and the court refused to extend the time, this was no reversible error, in the absence of a showing that an unreasonable limitation was placed upon argument of counsel. Following: Parkerson v. State, 9 Texas Crim. App., 72.

**6.—Same—Evidence—Letter.**

Upon trial of murder there was no error to admit in evidence a certain letter purported to have been written and addressed to the deceased signed Bill Jones, insisting that the deceased return to his wife at once, otherwise the matter would be referred to the Ku Klux Klan; the wife of the deceased having identified this letter and testifying that she had written it at the dictation of the appellant and that he had mailed it, under the facts of the instant case, and while this testimony should have been limited no instruction having been asked therefor, there is no reversible error. Distinguishing: Bishop v. State, 68 Texas Crim. Rep., 559, and other cases.

**7.—Same—Rehearing—Argument of Counsel—Limitation of Argument.**

While the record in the instant case reflects many facts and issues calling for discussion, this court cannot agree that an hour and a half for discussion was such an abuse of discretion of the trial judge as should call for reversal of the case, but the court calls the attention of trial judges to the fact that they should under no circumstances unreasonably restrict the argument of counsel.

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction therefor, the evidence supported the same, there is no reversible error.

Appeal from the District Court of Shelby. Tried below before the Honorable Chas. L. Brachfield.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*T. H. Postell,* for appellant.—On question of admitting in evidence letter to defendant: Smith v. State, 124 S. W. Rep., 919; Bishop v. State, 151 id., 821; Derossett v. State, 168 id., 531; Keel v. State, 204 id., 863.

On question of limiting argument: Walker v. State, 22 S. W. Rep., 685; Roe v. State, 8 id., 463; Zummer v. State, 141 id., 789.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State.

MORROW, PRESIDING JUDGE.—Appellant is condemned to confinement in the penitentiary for a period of ninety-nine years for the murder of T. H. Musselman.

Pearl Musselman, who was indicted for the same offense, gave, on behalf of the State, direct testimony that the appellant shot and killed the deceased. Details were given. She and the deceased had been married a short time. At the time of their marriage, the deceased applied for and afterwards obtained insurance upon his life for her benefit in the sum of $5,000. Appellant was present at the time of the making of the application and by his declarations to others than the accomplice manifested much interest in the policy and learned of its issuance. According to the testimony of the accomplice, appellant made love to her after her marriage, told her he was going to kill the deceased, intercepted letters from the deceased to her, wrote anonymous letters to the deceased to cause his return from Richmond where he had gone, went to the home of the deceased at night-time and borrowed a shotgun belonging to the deceased, and arranged and gave a signal upon which the accomplice brought the deceased out of his house into the yard. Appellant then suggested that they go to a neighbor's house where he claimed a party was in progress. The three walked some distance and appellant finally shot the deceased in the back of the head with a shotgun. After talking to the accomplice and threatening her in an effort to prevent the disclosure, he fled. Before doing so, however, he took a watch from the person of the deceased. The accomplice brought the gun and shells which had been in possession of the appellant to her home. Upon her entry she declared in the presence of her mother and sister that appellant had killed the deceased. According to the testimony introduced, upon examination of the gun it was found that one barrel had been fired. The body of the deceased was found at the point described by her. The wound on the head and the wadding from the shell were such as were

made by the weapon described by the accomplice. The watch of the deceased was traded by the appellant to another. The State's evidence was such as to justify the jury in the conclusion that the watch of the deceased, which was traded by appellant to a witness after the homicide and before his arrest, was the same as that introduced in evidence and identified. Certain letters which, according to the accomplice, were written by the appellant or by her at his instance were introduced in evidence. Her statements that he had opened her mail and had intercepted her letters to her husband were corroborated to a certain degree in that persons in charge of the mail testified that appellant had called for her mail and had also called for letters mailed by her. Circumstantially, it was shown that appellant and the accomplice had written a letter at the time and place designated by her which coincided with the time and place and character of stationery that the letter introduced in evidence was written.

Misconduct of the jury in discussing the failure of the accused to testify was made a ground to the motion for new trial. Oral evidence was heard. Taylor, the foreman of the jury, testified that upon their retirement, he was immediately selected as foreman and that he requested those of the jurors who deemed the appellant guilty to indicate it by standing; that they all stood; that they were then requested to indicate in the same manner whether they were for the death penalty or otherwise. Seven stood and five remained seated. These five indicated that they favored a penalty of ninety-nine years confinement in the penitentiary. A further discussion was deferred until the morning when the verdict was reached. Any discussion or reference to the failure of the appellant to testify, so far as Taylor was aware, was not mentioned or considered. He denied having made any statement to the attorney for the appellant to the contrary.

Juror Pinkston testified that the matter of appellant's failure to testify was not discussed by the jury nor considered by them. He corroborated Taylor with reference to the method of reaching the verdict. He admitted on cross-examination that he heard some one say that he did not understand why the accused did not take the stand if he was not guilty. That was after the jurors had agreed upon the guilt but before those who were for the death penalty had agreed to imprisonment. Ramsay, another juror, said that he heard such a remark made, but according to his judgment, it was after the verdict had been agreed upon. One of the counsel for the appellant testified to conversations with the jurors mentioned in which, according to his testimony, they made statements somewhat at variance with their testimony upon this hearing.

The truth of the averments in the motion for new trial being controverted and the persons who signed the affidavits attached to the motion supporting the averments of misconduct of the jury having

been introduced and their oral testimony heard by the court, there was no error in the court relying upon the oral testimony in passing upon the motion for new trial. The statute, Art. 841, C. C. P., vests in the trial judge the authority to hear evidence touching such averments by affidavit or otherwise. If the affidavits were considered they but tend to impeach the jurors who testified by contradictory statements out of court. The State having elected to controvert the motion, the burden was upon the appellant to sustain it by evidence. At best the evidence is conflicting, and it was within the province of the trial court to decide the issue of fact. There being evidence supporting the court's finding that there was no misconduct requiring a new trial, his conclusion is binding upon this court. Fox v. State, 53 Texas Crim. Rep., 150; Vernon's Texas Crim. Stat., Vol. 2, p. 793, and cases cited.

The mention of the appellant's failure to testify made, as in this case, after the jury had reached the conclusion that the accused was guilty and had determined that his punishment should be death or imprisonment for ninety-nine years, in view of the verdict, would not justify a reversal. Mason v. State, 74 Texas Crim. Rep., 256, 186 S. W. Rep., 115; Howe v. State, 77 Texas Crim. Rep., 108, 177 S. W. Rep., 497; Childs v. State, 10 Texas Crim. App., 183; Kelley v. State, 31 Texas Crim. Rep., 211; Cooper v. State, 72 Texas Crim. Rep., 266; Watson v. State, 82 Texas Crim. Rep., 305; Wilson v. State, 87 Texas Crim. Rep., 538.

On cross-examination of the wife of the deceased, appellant asked her if it was not a fact that upon a certain occasion she attempted to shoot Will Chadwick in the back with a pistol, and that on another occasion she attempted to poison H. H. Hutson by placing glass in his milk. Complaint was made of the refusal of the court to receive this testimony. Its relevancy is not perceived. No connection is shown between the subject of inquiry and the cause on trial. Specific acts of misconduct not culminating in a prosecution were not available for impeaching purposes. McAfee v. State, 17 Texas Crim. App., 138, and numerous other cases collated in Branch's Ann. Texas P. C., Sec. 168.

The shotgun which, according to the State's theory was used in the homicide, was introduced in evidence. The fact that it remained in the courtroom until removed upon request of the appellant was violative of no rule of evidence of which we are aware.

It was shown by Bill No. 7 that after one of the counsel for the appellant had spoken for an hour and ten minutes, the Court drew his attention to the fact that the time tentatively agreed upon for discussing the facts before the jury had expired, and the court refused to extend the time. What length of time was consumed in argument of the case upon behalf of the appellant by the other counsel who appeared for him is not revealed. The bill of exceptions fails to show

that an unreasonable limitation was put by the court upon the argument of counsel. Parkerson v. State, 9 Texas Crim. App., 72; and other cases listed in Branch's Ann. Texas P. C., sec. 358.

There was introduced in evidence a certain letter purporting to have been written and addressed to the deceased signed "Bill Jones", insisting that deceased return to his wife at once otherwise the matter would be referred to the Ku Kluk Klan. The wife of the deceased identified this letter and testified that she had written it at the dictation of the appellant and that he had mailed it. His frequent association with her was proved without controversy. His presence while "some woman" unknown to the witness who described it, was writing the letter was introduced in evidence. The letter was relevant upon the State's theory that the purpose in writing it was to bring the deceased home in order that he might be killed by the appellant. The fact that the accomplice testified that the letter was written at the request of the appellant and mailed by him entitled the State to introduce it. See Keel v. State, 84 Texas Crim. Rep., 43, 204 S. W. Rep., 865; Bishop v. State, 68 Texas Crim. Rep., 559. The truth of the statement of the accomplice that the appellant wrote it was like other testimony given by her in that it was incapable of producing a conviction unless corroborated. There would have been no impropriety in instructing the jury that the letters introduced in evidence and identified by the accomplice testimony could not be used to corroborate her unless they found that her statements connecting the accused with the writing or mailing of the letters was corroborated by the testimony. If such an instruction had been requested, doubtless the learned trial judge would have read it to the jury. See Bishop v. State, supra. No such instruction was requested, however; nor was there complaint of the charge because of the failure to embrace that item. The State was not bound to depend upon the letter for corroboration. There were circumstances that appellant was in possession of the watch of the deceased taken from his body at the time he was killed; and others showing his interest in the insurance policy payable to the wife of the deceased with whom the appellant was associated and to whom he had made love. She, according to the testimony of others, was with the appellant at the home of the deceased a short time before he was killed. He left the home of the deceased a short time before the homicide in possession of a gun which he and the accomplice used in killing the deceased. She, a short time later, returned to her home in the absence of the deceased and the appellant, and in possession of a gun which had been recently fired. The envelope containing the letter mentioned was likewise properly received in evidence.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

April 30, 1924.

LATTIMORE, Judge.—Appellant urgently insists that this case should have been reversed because of an unreasonable limitation upon the time allowed for argument. It appears that there was an agreement on the part of the court and counsel before the argument begun and that during the argument the time fixed in said agreement was twice extended by the court. Altogether the court allowed an hour and fifty minutes. While the record reflects many facts and issues calling for discussion, we cannot agree that this was such an abuse of the discretion of the learned trial judge as should call for a reversal at our hands. We deem it not amiss to call attention to the importance of allowing sufficient time to discuss the issues in felony cases, and conceive it to be a matter which should under no circumstances be made unreasonably restrictive. We have again carefully reviewed the entire record because of appellant's claim that the evidence does not support the conviction, but are confirmed in our conclusion that there was sufficient evidence before the jury to justify their verdict. The bad character attributed to the wife of deceased, even if conceded, would be in entire accord with the theory of the State and its testimony tending to show that her relations with appellant were such as that she might be a participant, whether willing or unwilling, with him in the conspiracy to bring about the death of deceased, which is fully developed by her testimony. There seems ample evidence to corroborate her as is required by law.

Believing the appellant to have had a fair trial, the motion for rehearing will be overruled.

*Overruled.*