This Court granted the petition for a writ of certiorari to the Court of Criminal Appeals to resolve an alleged conflict between the decision in this case and previous decisions of this Court. We affirm.
This alleged conflict concerns the sufficiency of the corroboration of an accomplice's testimony. The petitioner contends that the State did not present enough corroborating evidence to satisfy the requirements of Code 1975, § 12-21-222, which provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Accordingly, the petitioner asserts that the Court of Criminal Appeals erred in its determination *Page 389 
that sufficient corroboration tending to connect the defendant
with the commission of the offense charged in the indictment was presented by the State. The pertinent facts are adequately set out in the opinion of the Court of Criminal Appeals and we will recite the facts only where it is necessary for our treatment of the issue in this case.
It is recognized that corroborative evidence is of two kinds. The first kind of corroborative evidence consists of facts and circumstances which support the testimony of the accomplice without regard to the defendant's alleged participation in the criminal activity. The second type of corroborative evidence, envisioned by § 12-21-222 and essential to sustain a conviction based on an accomplice's testimony, is evidence which tends to connect the defendant with the commission of the offense.Slayton v. State, 234 Ala. 9, 173 So. 645 (1937); Blevins v.State, 56 Ala. App. 115, 319 So.2d 734, cert. denied 294 Ala. 753, 319 So.2d 739 (1975). To paraphrase the statute, corroborative evidence which merely shows the commission of the offense or the circumstances thereof (the first type of corroborative evidence) is not sufficient to sustain a conviction unless there is other evidence tending to connect the defendant with the commission of the offense (the second type of corroborative evidence).
The second type of corroborative evidence, with which we are here concerned, does not have to be sufficiently strong in itself to support a conviction, Senn v. State, 344 So.2d 192
(Ala. 1977), but "[i]t must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt." Senn, supra, at 193, quoting Sorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947). There is a fine line drawn between corroborative evidence which does no more than raise a suspicion of guilt and evidence of such a nature that it tends to connect the defendant with the commission of the offense.
The procedure for determining on which side of this fine line the corroborative evidence falls has been characterized as a subtraction process. Kimmons v. State, 343 So.2d 542
(Ala.Cr.App. 1977).
 "The court held that, first, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. . ."
Senn, supra, at 193, quoting Miller v. State, 290 Ala. 248,275 So.2d 675 (1973).
The Court of Criminal Appeals has enumerated twelve corroborating facts which purportedly "have a tendency to connect the appellant with the burglary of the Gadsden Board of Education Building." The application of the test set out above, to the twelve corroborating facts set out in the opinion of the Court of Criminal Appeals reveals that several of these corroborating facts do not tend to connect the defendant with the commission of the offense. They merely support the accomplice's testimony and verify his version of the circumstances surrounding the commission of the offense.
Excising the testimony of Thompson's alleged accomplice, we are left with this relevant evidence.
 1. After public allegations of overcharges were made against the appellant, both the Gadsden Board of Education and the appellant's construction company were burglarized. Only the records pertaining to the alleged overcharges were stolen at the Board of Education. Those records, along with other items, wee taken from Thompson Construction Company.
 2. The records relating to the overcharge allegations had been kept in the board room; the appellant had been in the building and knew where the records were kept.
 3. Ten or twelve people had keys to the building and four people had keys to the board room.
 4. Mr. Leftwich noticed that his key ring (containing a key to the board room) had been moved from one drawer of his desk to another drawer. *Page 390 
 5. There were no signs of forced entry at the Board of Education Building.
 6. A piece of a torn invoice was found on the table in the board room.
 7. Sergeant Connell investigated the break-ins at Thompson Construction Company and the Board of Education Building; the appellant informed him that the construction records might be missing.
 8. Sergeant Connell observed a broken window and broken glass scattered through the drawers of a desk underneath the broken window at Thompson Construction Company.
 9. Sergeant Connell testified that some man at the Board of Education Building told him that a key was missing.
 10. Mr. Thomas McBrayer testified that he made two duplicate keys for the appellant on January 19, 1974.
 11. Mr. Jack Floyd testified that he examined certain records relating to the high school reconstruction project and in essence, that he questioned certain rental charges that had been made in connection with this project.
 12. Mr. Joseph Cramer testified that he overheard a conversation between the appellant and Fred Orgovan, a co-indictee, concerning certain liquor.
 13. Mrs. Ruby Clara Cochran testified that her husband left the house on the night of the burglaries with Fred Orgovan carrying two pillowcases; he returned later with a bottle of liquor and a "Thompson Construction Company" cigarette lighter, but without pillowcases.
 14. Mrs. Cochran also testified that several days after the burglaries, her husband gave her two one hundred dollar bills and some twenties.
Of this remaining evidence, only items 1, 2, 8, 10, 11 and 12 tend to connect the appellant with the commission of this offense. The other items tend only to support the accomplice's version of the circumstances surrounding the commission of the offense without connecting the appellant to its commission.
Items 1, 2 and 11 tend to connect the appellant with the commission of this burglary by establishing the appellant's motive for the commission of this offense. As the Court of Criminal Appeals correctly noted, motive is legitimate evidence which may be used in connection with other evidence to corroborate an accomplice's testimony. It has been noted that when motive is used in this fashion, it may become very important. Slayton v. State, 27 Ala. App. 422, 173 So. 632,rev'd on other grounds, 234 Ala. 1, 173 So. 642 (1936).
Item 8 tends to connect the appellant with the commission of this offense. Testimony to the effect that glass from a broken outside window was found inside desk drawers beneath the window would certainly permit an inference that the purported break-in at the appellant's place of business was feigned, i.e., that the theft of the records and equipment, the ransacking of the office and the opening of the desk drawers took place before the outside window was broken.
Item 10 concerns the appellant's purchase of two duplicate Eagle keys from Mr. McBrayer on January 19, 1974. This purchase, when considered in light of the apparent lack of forced entry, (item 5, supra), would permit a reasonable inference that the appellant was connected with this burglary.
Finally, item 12, along with item 8, although circumstantial in nature, supports an inference of the appellant's complicity with regard to the break-in at his place of business. The Court of Criminal Appeals noted that these two burglaries were "intermixed" and if so, complicity in one burglary would tend to connect the appellant with the commission of the other burglary.
Speculation and suspicion will not support a conviction based on the uncorroborated testimony of an accomplice, Kimmons,supra, but the weakness of the corroborating evidence, in and of itself does not preclude a finding that such evidence tends to connect the defendant with the commission of the offense.House v. State, 342 So.2d 461 (Ala.Cr.App. 1977). Where *Page 391 
such a finding is made, the weakness and inconclusiveness, vel non of the corroborating evidence is determined by the jury.
Recognizing that cases of this type turn on the facts and circumstances of each individual case, we conclude that there was enough corroborating evidence presented to sustain the appellant's conviction. Based upon that conclusion and the reasons hereinabove set out, the holding of the Court of Criminal Appeals is affirmed.
AFFIRMED.
All the Justices concur, except BEATTY, J., who recuses himself, and TORBERT, C.J., not sitting.