TYSON, Judge.
William Grady Herring was indicted for the reckless murder of Richard Lee Wor-ley, in violation of § 13A-6-2(a)(2), Code of Alabama 1975. The jury found the appellant “guilty of the lesser included offense of manslaughter.” The appellant was sentenced to thirty years’ imprisonment in the penitentiary.
On the evening of September 6, 1987, Denise Black Ramos saw Terry Quates at the Spider Web in Georgiana, Alabama. Ramos testified that she and Quates left the Spider Web together in her car. At some point, Ramos’s car ran into a ditch and Quates attacked her and tried to rape her.
The next day, September 7, Ramos called the appellant, who is her brother-in-law, to help her get her car out of the ditch. At this time, she told the appellant what had happened the previous night and told him to bring a gun because she wanted Quates hurt. The appellant and Ramos’s brother, Keith Black, came and removed Ramos’s car from the ditch. The appellant, in Ramos’s car, followed Ramos and Black in the appellant’s truck. At some point, Ramos *797 went into a Super Foods and told Linda Brooks that they “were going to get Terry Quates.” The appellant, Ramos and Black then drove by Quates’s house in Chapman, Alabama. Ramos pointed out the house to Black and the appellant. Black then got out of the appellant’s truck with his shotgun and some shells. He gave them to the appellant and Black got into Ramos’s car with the appellant. Ramos then went home in the appellant’s truck.
Clarence Cartwright testified that he, the appellant, and Black drove past Quates’s house at approximately 7:00-7:30 on the night of September 7, 1987, and parked about 100 yards away from the house. The three got out of the car and walked toward Quates’s house with a shotgun. As they were walking, they heard some dogs barking. Cartwright then went back to the car and began driving towards Quates’s house. Cartwright soon heard two shots and saw Black running towards the car. Black got in the car followed by the appellant who was observed holding a shotgun twenty to thirty seconds later. The three then drove to Greenville, Alabama, where Black threw the gun out in front of the appellant’s trailer. On the way to Green-ville, the appellant stated that he had fired a shot at the house.
Black testified that he, the appellant and Cartwright went and parked near the home of Quates on the night in question. Before they reached the house on foot, Cartwright returned to the car. As Black and the appellant approached Quates’s house, they could see into the house because the lights were on inside. At this point, Black gave his shotgun to the appellant and the appellant told Black to return to the car. As Black was returning to the car, he heard two shots. He and the appellant then got into the car and they went back to Green-ville where they threw the gun out of the vehicle beside this appellant’s house.
Black later retrieved the gun and gave it to Teddy Mauch to clean.
Mauch testified that two officers picked up the gun that Black gave him at his house.
Essie Mae Griggers testified that she lives approximately 100 yards from Quates’s house. On the night in question, she heard dogs barking and then heard two shots. Quates then came to her door and her nephew, Eddie Skipper, went with Quates to his house.
Skipper testified that, when he went inside Quates’s house, he saw Richard Wor-ley lying on the floor bleeding from his head and neck. Skipper did not detect any signs of life. He called the police and an ambulance.
Terry Quates testified that, during the afternoon of September 7, 1988, he saw a truck stop outside his house. When he went outside to see who it was, the truck took off. That evening, Richard Worley came over to his house. At some point, Worley and Quates were sitting on the floor near a window. Worley had his back to the open front window. Quates heard a dog barking and looked outside but he saw nothing. He went back inside the house and, several minutes later, Quates heard a shot and saw Worley fall to the floor. Quates then went for help.
Jimmy Hartin, the owner of Hartin Ambulance Service, went to Quates’s house on the night in question and found Worley lying on the floor. Worley died while Har-tin was attending him. An autopsy revealed that Worley received thirteen projectile injuries to the left side of his head and chest. He died as a result of these injuries. Several pellets were removed from Wor-ley’s body and were turned over to the Department of Forensic Sciences.
An investigation was conducted on Quates’s house on the night in question. A three-inch spent Magnum buckshot hull and a live round were found approximately forty feet from Quates’s house. Investigators determined that the shotgun was fired from behind a bush outside Quates’s house. There were thirty-seven holes in the window screen. This indicates that two shots were fired because a three-inch Magnum shell only contains twenty-four pellets.
The police also recovered a shotgun from Mauch. The gun had the initials K.B. carved on the stock. The shotgun, the *798 spent shell, the live round and the pellets removed from Worley’s body were turned over to Lonnie Harden for examination.
Harden is a firearms and toolmark examiner for the Department of Forensic Sciences. He determined that the spent shell had been fired through the shotgun retrieved from Mauch. This shell was identified as a three-inch Magnum number one buckshot. The pellets removed from Wor-ley’s body were number one buckshot which is compatible with the spent shell. The live round contained twenty-four pellets.
I
The sole issue raised by this appellant is that his conviction was based solely on the uncorroborated testimony of his accomplices. Thus, he contends that his motion for judgment of acquittal should have been granted.
Section 12-21-222, Code of Alabama 1975 provides:
“A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
(A)
The first task before us is to determine which witnesses were accomplices. “The classic and usual test to determine whether a witness is an accomplice is whether he could be indicted and convicted for the particular offense, either as principal or accessory.” Jacks v. State, 364 So.2d 397, 401 (Ala.Crim.App.), cert. denied, 364 So.2d 406 (Ala.1978) (citations omitted).
There is no doubt that Keith Black and. Clarence Cartwright are accomplices. Both were indicted for this crime along with the appellant and both of them pled guilty to the charge of manslaughter for this offense.
Furthermore, both Black and Cartwright admitted their participation in this crime. When a witness admits participation in a crime, that witness is an accomplice as a matter of law. Craig v. State, 376 So.2d 803 (Ala.Crim.App.), cert. denied, 376 So.2d 807 (Ala.1979). The State does not dispute the fact that both Black and Cartwright were accomplices.
Although Denise Black Ramos was never indicted for this offense, the question is whether vel non she could have been indicted for this offense. If so, then she was an accomplice.
“Except where the state’s evidence un-disputedly makes the witness an accomplice, the defendant has the burden of showing the witness’s complicity. Fairbanks v. State, 46 Ala.App. 236, 239 So.2d 908 (1970); Moore v. State, 15 Ala.App. 152, 72 So. 596 (1916).
“Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Doss v. State, 220 Ala. 30, 123 So. 231 (1929). However the question of complicity is usually a question of fact; it becomes a question of law only where the court is clearly convinced by a preponderance of the evidence that the witness could have been indicted and convicted of the same charge of a felony for which the defendant is on trial and that the witness freely participated in the crime. Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. Pryor v. State, 47 Ala.App. 706, 260 So.2d 614 (1972).”
Jacks, 364 So.2d at 403.
Our review of the evidence reveals that Ramos was undisputedly an accomplice to this offense. On the day this offense was committed, Ramos called the appellant and asked him to help her get her car out of a ditch. At this time, she told him that Quates had attacked her the previous night. Ramos told the appellant to bring a gun because she wanted Quates hurt.
The appellant and Black then came and helped Ramos remove her car from the ditch. They then went to a supermarket *799 and Ramos told someone that “they were going to get Quates.” Next, Ramos took the appellant and Black to Quates’s house and pointed it out to them. Ramos saw Black give his shotgun and some shells to this appellant. At this point, she left the appellant and Black at the scene.
Section 13A-2-23(l) Code of Alabama 1975 states:
“A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
“He procures, induces or causes such other person to commit the offense.”
Although Ramos was not present at the scene when this offense was committed, she is not thus relieved of liability for this offense. One who procures, assists or counsels another to commit a crime is guilty as a principal, even if he or she is absent at the time the offense is committed. Faircloth v. State, 471 So.2d 485 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985).
“Any words or acts of a person which contribute to the commission of a crime, which are intended to incite or encourage the commission of that crime, make that person liable for the crime as a principal.” Graham v. State, 494 So.2d 916, 921 (Ala.Crim.App.1986).
The evidence at bar clearly reveals that Ramos procured, induced and caused the commission of this offense. She told the appellant that Quates attacked her, told him to bring a gun because she wanted Quates hurt and showed the appellant and Black where Quates lived.
The fact that Worley, the deceased, was not the intended victim does not relieve Ramos of liability. “Parties are responsible as accomplices for consequent acts growing out of a general design ...” Jacks, 364 So.2d at 402.
It is clear to us that Ramos could have been indicted for this offense. In fact, one of the investigators in this case threatened to indict her for conspiracy to commit murder. Thus, we find that Ramos was an accomplice as a matter of law.
Next we must determine whether there was sufficient corroborating evidence to connect this appellant.
“ ‘The test for determining the sufficiency of the corroborative evidence of the testimony of an accomplice is through a “subtraction process”. Thompson v. State, 374 So.2d 388, 389 (Ala.1979), citing Kimmons v. State, 343 So.2d 542 (Ala.Cr.App.1977). The test is generally stated:’
“ ‘ “[F]irst, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corrobora-tion_’” Miller v. State, 290 Ala. 248, 250, 275 So.2d 675 (1973). (Emphasis added [in McCoy]).
“ ‘This rule is codified in Alabama Code 1975, Section 12-21-222.’
"‘McCoy v. State, 397 So.2d 577, 585 (Ala.Cr.App.), cert. denied, 397 So.2d 589 (Ala.1981).
“ ‘ “The corroboration which is sufficient to support the accomplices’ testimony must be of some fact tending to prove the guilt of the defendant.... It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt....’” Sorrell v. State, 249 Ala. 292, 31 So.2d 82, 83.
“ ‘Ex parte Bell, 475 So.2d 609, 613 (Ala.1985). See also Booker v. State, 477 So.2d 1388, 1390 (Ala.Cr.App.1985).
“ ‘ “[E]vidence which merely raises a conjecture, surmise, speculation, or suspicion that accused is the guilty person is not ... sufficiently corroborative of the testimony of an accomplice to warrant a conviction.” 23 C.J.S. Criminal Law, Section 812(5)(b)’.” Staton v. State, 397 So.2d 227, 232 (Ala.Cr.App.1981).” ’ ”
Steele v. State, 512 So.2d 142, 143-44 (Ala.Crim.App.), cert, denied, 512 So.2d 142 (Ala.1987).
*800 If the testimonies of Ramos, Black and Cartwright are eliminated, there is no evidence in the record to connect this appellant with this offense. There was no evidence which placed the appellant near the scene of the crime or with Black and Cartwright on the night in question. Although the murder weapon was recovered, the evidence showed it belonged to Black. There was absolutely no evidence connecting this appellant to this weapon.
Thus, we find there was insufficient corroboration of Black’s, Ramos’s and Cartwright’s testimonies to sustain this conviction. We are bound to apply the laws of this state to the facts before us.
Section 12-21-222, Code of Alabama 1975 clearly prohibits a conviction based on the uncorroborated testimony of an accomplice.
For the reasons shown, this case is due to be and is hereby reversed and rendered. Booker v. State, 477 So.2d 1388 (Ala.Cr.App.1985); McCoy v. State, 397 So.2d 577 (Ala.Cr.App.), cert. denied 397 So.2d 589 (Ala.1981).
REVERSED AND RENDERED.
BOWEN, P.J., and PATTERSON and McMILLAN, JJ., concur.
TAYLOR, J., dissents without opinion.